## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISON

| | |
|---|---|
| DEWAYNE GRAY, | ) **COMPLAINT** |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) **Case No: 6:23-cv-472** |
| RECEIVABLES MANAGEMENT | ) |
| SYSTEMS | ) |
| | ) |
| & | ) |
| | ) **JURY TRIAL DEMANDED** |
| MEDICAL DATA SYSTEMS, INC. | ) |
| | ) |
| & | ) |
| | ) |
| IC SYSTEM, INC. | ) |
| | ) |
| & | ) |
| | ) |
| EQUIFAX INFORMATION | ) |
| SERVICES, LLC | ) |
| | ) |
| & | ) |
| | ) |
| EXPERIAN INFORMATION | ) |
| SOLUTIONS, INC. | ) |
| | ) |
| & | ) |
| | ) |
| TRANS UNION, LLC | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff Dewayne Gray, by and through the undersigned counsel, and for his Complaint against Defendants Receivables Management Systems ("RMS"), Medical Data Systems, Inc. ("MDS"), IC System, Inc. ("ICS"), Equifax Information Services, LLC ("EQ"), Experian Information Solutions, Inc. ("EX"), and Trans Union, LLC ("TU") (and together collectively, "Defendants") for violations under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") and for violations under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), states as follows:

## JURISDICTION

1.     This court has jurisdiction of the federal claim under 15 U.S.C. § 1692k(d) and 1681(p).

2.     Venue is proper because Plaintiff resides here, the acts and transactions occurred here, and RMS, MDS, ICS, EQ, EX, and TU transact business here.

3.     Under 28 U.S. Code § 1391(b)(2) a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

4.     Under 28 U.S. Code § 1391(d) when a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state.

5.     Plaintiff resides in the city of Flint, a part of Smith County, TX 75762.

6.     The acts that occurred giving rise to this complaint occurred while Plaintiff was in the city of Flint, a part of Smith County, TX 75762, making the Tyler Division a proper venue under 28 U.S. Code § 1391(b)(2).

7.     Defendant RMS, a Virginia corporation headquartered in Midlothian, VA, practices as a debt collector throughout the country, including TX.

8.     Defendant MDS, a Florida corporation headquartered in Vero Beach, FL, practices as a debt collector throughout the country, including TX.

9.     Defendant ICS, a Minnesota corporation headquartered in Saint Paul, MN, practices as a debt collector throughout the country, including TX.

10.     Defendants RMS, MDS, and ICS attempt to collect alleged debts throughout the state of TX, including in Flint city and Smith County.

11.     Defendants RMS, MDS, and ICS have actual knowledge of where Plaintiff resided, and by attempting to collect from Plaintiff, purposefully availed themselves to the jurisdiction in which Plaintiff resided.

12.    Defendants RMS, MDS, and ICS have sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Flint city and Smith County and Defendants attempt to collect alleged debts throughout the state of TX.

13.    Defendants RMS, MDS, and ICS knowingly attempted to collect on debts allegedly incurred in Flint, TX and thus have sufficient minimum contacts with this venue is additionally proper under 28 U.S. Code § 1391(b)(1).

14.    Defendant EQ, a Georgia corporation headquartered in Atlanta, GA, practices as a debt collector throughout the country, including TX.

15.    Defendant EQ serves as a credit reporting agency of consumer credit throughout the state of TX, including in Flint city and Smith County.

16.    Defendant EQ has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant EQ purposefully availed itself to the jurisdiction in which Plaintiff resided.

17.    Defendant EQ has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Flint city and Smith County and Defendant attempts to collect alleged debts throughout the state of TX.

18.    Defendant EQ knowingly reported information regarding a Plaintiff domiciled in Flint, TX and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(1).

19.    Defendant EX, an Ohio corporation headquartered in Costa Mesa, CA, practices as a debt collector throughout the country, including TX.

20.    Defendant EX serves as a credit reporting agency of consumer credit throughout the state of TX, including in Flint city and Smith County.

21.    Defendant EX has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant EX purposefully availed itself to the jurisdiction in which Plaintiff resided.

22.     Defendant EX has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Flint city and Smith County and Defendant attempts to collect alleged debts throughout the state of TX.

23.     Defendant EX knowingly reported information regarding a Plaintiff domiciled in Flint, TX and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(1).

24.     Defendant TU, a Delaware corporation headquartered in Chicago, IL, practices as a debt collector throughout the country, including TX.

25.     Defendant TU serves as a credit reporting agency of consumer credit throughout the state of TX, including in Flint city and Smith County.

26.     Defendant TU has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant TU purposefully availed itself to the jurisdiction in which Plaintiff resided.

27.     Defendant TU has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Flint city and Smith County and Defendant attempts to collect alleged debts throughout the state of TX.

28.     Defendant TU knowingly reported information regarding a Plaintiff domiciled in Flint, TX and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(1).

**STANDING**

29.     Plaintiff has a congressionally defined right to receive all communications from a debt collector free from any misrepresentations and false threats.

30.     RMS, MDS, and ICS's collection activities violated the FDCPA.

31.     Defendants' credit reporting and/or failure to properly dispute information violated the FCRA.

32.     Plaintiff has thus suffered an injury as a result of Defendants' conduct, giving rise to standing

before this Court. <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1544 (2016), quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); <u>Bellwood v. Dwivedi</u>, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

33.    "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" <u>Lane v. Bayview Loan Servicing, LLC</u>, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016)(quoting 15 U.S.C. § 1692(b)). Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing. See id. at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied her the right to information due to her under the FDCPA."); see also <u>Church v. Accretive Health, Inc.</u>, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

34.    "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is not a necessary condition." <u>Lane</u>, 2016 WL 3671467 at *4.

## PARTIES

35.    Plaintiff, Dewayne Gray (hereafter "Plaintiff"), is a natural person currently residing in Smith County, in the state of TX.

36.    Plaintiff is a "consumer" within the meaning of the FDCPA, 15 U.S.C. § 1692a(3).

37.    Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

38.    Defendant RMS is a Virginia corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 1807 Hugenot Rd., Ste 118, Midlothian, VA 23113.

39.    Defendant MDS is a Florida corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 2001 9th Avenue, Ste. 312, Vero Beach, FL 32960.

40.     Defendant ICS is a Virginia corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 444 Highway 96 E, Saint Paul, MN 55127.

41.     RMS, MDS, and ICS are each engaged in the business of a collection agency, using the mails, telephone, and consumer collection agencies to collect consumer debts originally owed to others.

42.     RMS, MDS, and ICS regularly collect or attempt to collect defaulted consumer debts due or asserted to be due another, and are each a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

43.     Defendant EQ is a Georgia corporation with its principal place of business located at 1550 Peachtree St. NE #H-46, Atlanta, GA 30309.

44.     Defendant EX is an Ohio corporation with its principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626.

45.     Defendant TU is a Delaware corporation with its principal place of business located at 555 W. Adams Street, Chicago, IL 60661.

46.     Defendants RMS, MDS, and ICS are each a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. §1681s-2(b).

47.     EQ, EX, and TU are each a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p). EQ, EX, and TU regularly engage in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide:

   a. Public record information;

   b. Credit account information from persons who furnish that information regularly and in the ordinary course of business.

## FACTUAL ALLEGATIONS

48.     Plaintiff is a natural person allegedly obligated to pay a debt asserted to be owed to a creditor other than RMS, MDS, and ICS.

49.      On a date better known by RMS, RMS began to attempt to collect an alleged consumer debt from the Plaintiff.

50.      The alleged debt was said to be owed to Elephant Auto Insurance.

51.      That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

52.      That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

53.      The reporting of the alleged debt contains an inaccurate balance.

54.      The reporting of the alleged debt contains an inaccurate status.

55.      The reporting of the alleged debt contains inaccurate delinquency information.

56.      The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

57.      That RMS was reporting the collection account on Plaintiff's credit report with EQ and TU.

58.      That RMS was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

59.      RMS's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

60.      On or about 08/01/2022, Plaintiff sent dispute letters to EQ and TU notifying the account with RMS as disputed. **Exhibit A and Exhibit C.**

61.      These letters provided notice of the inaccurate reporting to EQ and TU.

62.      Once EQ and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case RMS.

63.      EQ and TU received the letters sent by Plaintiff.

64.      EQ and TU transmitted notice of these disputes to RMS via an Automated Credit Dispute Verification form ("ACDV").

65.     RMS was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

66.     Alternatively, EQ and TU failed to send notice of the disputes to RMS after receiving notice of the disputes from Plaintiff.

67.     After receiving this notice, in any subsequent voluntary reporting, RMS must then include the dispute notation on said account.

68.     On or about 10/26/2022, Plaintiff received an updated credit file from EQ. **Exhibit D.**

69.     That the credit report was updated on 10/01/2022 by RMS.

70.     That the updated 10/26/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to RMS.

71.     Alternatively, that the updated 10/26/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify RMS.

72.     On or about 10/26/2022, Plaintiff received an updated credit file from TU. **Exhibit D.**

73.     That the credit report was updated on 10/21/2022 by RMS.

74.     That the updated 10/26/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to RMS.

75.     Alternatively, that the updated 10/26/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify RMS.

76.     That the updated 10/26/2022 credit report did not contain updated marked as disputed information.

77.     Upon information and belief, the updated 10/26/2022 credit report contained inaccurate information.

78.     RMS failed to investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

79.     RMS must have voluntarily updated the Plaintiff's alleged account by communicating with EQ and TU.

80.     That RMS furnished information to EQ and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EQ and TU of the disputes.

81.     That RMS failed to update the account information and mark the account as disputed on the updated 10/26/2022 credit report after Plaintiff disputed the account on 08/01/2022 and was given notice of such by EQ and TU.

82.     In the alternative, if RMS properly updated the account information and marked the account as disputed with EQ and TU after receiving notification of disputes from Plaintiff, then EQ and TU failed to update the account information and mark the account as disputed on the updated 10/26/2022 credit report.

83.     That RMS never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EQ and TU.

84.     Alternatively, EQ and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from RMS in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

85.     On a date better known by MDS, MDS began to attempt to collect an alleged consumer debt from the Plaintiff.

86.     The alleged debt was said to be owed to UT Health Henderson and UT Health Tyler.

87.     That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

88.     That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

89.     The reporting of the alleged debt contains an inaccurate balance.

90.     The reporting of the alleged debt contains an inaccurate status.

91.     The reporting of the alleged debt contains inaccurate delinquency information.

92.     The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

93. That MDS was reporting the collection account on Plaintiff's credit report with EQ, EX, and TU.

94. That MDS was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

95. MDS's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

96. On or about 08/01/2022, Plaintiff sent dispute letters to EQ, EX, and TU notifying the account with MDS as disputed. **Exhibit A, Exhibit B, and Exhibit C.**

97. These letters provided notice of the inaccurate reporting to EQ, EX, and TU.

98. Once EQ, EX, and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case MDS.

99. EQ, EX, and TU received the letters sent by Plaintiff.

100. EQ, EX, and TU transmitted notice of these disputes to MDS via an Automated Credit Dispute Verification form ("ACDV").

101. MDS was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

102. Alternatively, EQ, EX, and TU failed to send notice of the disputes to MDS after receiving notice of the disputes from Plaintiff.

103. After receiving this notice, in any subsequent voluntary reporting, MDS must then include the dispute notation on said account.

104. On or about 10/26/2022, Plaintiff received an updated credit file from EQ. **Exhibit D.**

105. That the credit report was updated on 09/01/2022 by MDS.

106. That the updated 10/26/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to MDS.

107. Alternatively, that the updated 10/26/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify MDS.

108.    On or about 10/26/2022, Plaintiff received an updated credit file from EX. **Exhibit D.**

109.    That the credit report was updated on 10/23/2022 by MDS.

110.    That the updated 10/26/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EX, and transmitted to MDS.

111.    Alternatively, that the updated 10/26/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EX after EX failed to notify MDS.

112.    On or about 10/26/2022, Plaintiff received an updated credit file from TU. **Exhibit D.**

113.    That the credit report was updated on 10/23/2022 by MDS.

114.    That the updated 10/26/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to MDS.

115.    Alternatively, that the updated 10/26/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify MDS.

116.    That the updated 10/26/2022 credit report did not contain updated marked as disputed information.

117.     The updated 10/26/2022 credit report contained inaccurate information.

118.    MDS failed to investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

119.    MDS must have voluntarily updated the Plaintiff's alleged account by communicating with EQ, EX, and TU.

120.    That MDS furnished information to EQ, EX, and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EQ, EX, and TU of the disputes.

121.    That MDS failed to update the account information and mark the account as disputed on the updated 10/26/2022 credit report after Plaintiff disputed the account on 08/01/2022 and was given notice of such by EQ, EX, and TU.

122.    In the alternative, if MDS properly updated the account information and marked the account as disputed with EQ, EX, and TU after receiving notification of disputes from Plaintiff, then EQ, EX, and TU failed to update the account information and mark the account as disputed on the updated 10/26/2022 credit report.

123.    That MDS never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EQ, EX, and TU.

124.    Alternatively, EQ, EX, and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from MDS in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

125.    On a date better known by ICS, ICS began to attempt to collect an alleged consumer debt from the Plaintiff.

126.    The alleged debt was said to be owed to AT&T U-Verse and AT&T DirectTV.

127.    That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

128.    That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

129.    The reporting of the alleged debt contains an inaccurate balance.

130.    The reporting of the alleged debt contains an inaccurate status.

131.    The reporting of the alleged debt contains inaccurate delinquency information.

132.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

133.    That ICS was reporting the collection account on Plaintiff's credit report with EX and TU.

134.    That ICS was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

135.    ICS's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

136.    On or about 08/01/2022, Plaintiff sent dispute letters to EX and TU notifying the account with ICS as disputed. **Exhibit B, and Exhibit C.**

137.    These letters provided notice of the inaccurate reporting to EX and TU.

138.    Once EX and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case ICS.

139.    EX, and TU received the letters sent by Plaintiff.

140.    EX, and TU transmitted notice of these disputes to ICS via an Automated Credit Dispute Verification form ("ACDV").

141.    ICS was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

142.    Alternatively, EX, and TU failed to send notice of the disputes to ICS after receiving notice of the disputes from Plaintiff.

143.    After receiving this notice, in any subsequent voluntary reporting, ICS must then include the dispute notation on said account.

144.    On or about 10/26/2022, Plaintiff received an updated credit file from EX. **Exhibit D.**

145.    That the credit report was updated on 10/23/2022 by ICS.

146.    That the updated 10/26/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EX, and transmitted to ICS.

147.    Alternatively, that the updated 10/26/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EX after EX failed to notify ICS.

148.    On or about 10/26/2022, Plaintiff received an updated credit file from TU. **Exhibit D.**

149.    That the credit report was updated on 10/23/2022 by ICS.

150.    That the updated 10/26/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to ICS.

151.    Alternatively, that the updated 10/26/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify ICS.

152.    That the updated 10/26/2022 credit report did not contain updated marked as disputed information.

153.    The updated 10/26/2022 credit report contained inaccurate information.

154.    ICS failed to investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

155.    ICS must have voluntarily updated the Plaintiff's alleged account by communicating with EQ, EX, and TU.

156.    That ICS furnished information to EX, and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EX, and TU of the disputes.

157.    That ICS failed to update the account information and mark the account as disputed on the updated 10/26/2022 credit report after Plaintiff disputed the account on 08/01/2022 and was given notice of such by EX, and TU.

158.    In the alternative, if ICS properly updated the account information and marked the account as disputed with EX, and TU after receiving notification of disputes from Plaintiff, then EX, and TU failed to update the account information and mark the account as disputed on the updated 10/26/2022 credit report.

159.    That ICS never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EX, and TU.

160.    Alternatively, EX, and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from ICS in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

161.    All of RMS, MDS, and ICS's actions under the FDCPA complained of herein occurred within one year of the date of this Complaint.

162.    All of Defendants' actions under the FCRA complained of herein occurred within two years of the date of this Complaint.

163.    Plaintiff suffered injury-in-fact by being subjected to inaccurate, unfair, and abusive practices of the RMS, MDS, ICS, and/or EQ, EX, and TU.

164.    Plaintiff suffered actual harm by being the target of inaccurate credit reporting and/or misleading debt collection communications by RMS, MDS, ICS, and/or EQ, EX, and TU.

165.    Plaintiff has suffered actual harm due to credit denials caused by false credit reporting by RMS, MDS, ICS, and/or EQ, EX, and TU.

166.    Plaintiff has suffered actual harm based on his costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

167.    Plaintiff's injury-in-fact is fairly traceable to the challenged representations of RMS, MDS, ICS, and/or EQ, EX, and TU.

168.    Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

**Count I: Violations Of § 1692e Of The FDCPA – False, Deceptive, Or Misleading Collection Actions**

169.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

170.    Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

171.    That because Plaintiff disputed the debt, RMS, MDS, and ICS, when choosing to contact the consumer reporting agencies, were obligated to inform them of the disputed status of the accounts. See Dixon v. RJM Acquisitions, L.L.C., 640 Fed. Appx. 793 (10th Cir. 2016) (Reversed summary judgment to the collection agency on the consumer's § 1692e(8) claim that after she had disputed a debt, the agency had nevertheless reported the debt without disclosing the disputed. The consumer created a genuine fact issue given that she said during the recorded conversation: "I feel that all I owe is $20." A reasonable fact finder could treat the statement as a dispute of the alleged $102.99 debt.); Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173 (10th Cir. 2013) "(We agree with the Eighth Circuit's interpretation of § 1692e(8) that a debt collector does not have an affirmative duty to notify [credit reporting agencies] that a consumer disputes the debt unless the debt collector knows of the dispute and elects to report to a CRA.")

172.    RMS, MDS, and ICS used deceptive and misleading tactics when they communicated personal credit information which was known or which should have been known to be false, including the failure to

15

communicate the debts were disputed in violation of 15 U.S.C. §§ 1692e, 1692e(8). See <u>Sayles v. Advanced Recovery Systems, Incorporated</u>, 865 F.3d 246, 249 (5th Cir. 2017); <u>Brady v. Credit Recovery Co.</u>, 160 F.3d 64 (1st Cir. 1998) (The plain language of the FDCPA requires debt collectors to communicate the disputed status of a debt if the debt collector knows or should know that the debt is disputed. This standard requires no notification by the consumer but depends on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is required.)

173.    RMS, MDS, and ICS's collection communications are to be interpreted under the "least sophisticated consumer" standard. See, <u>Goswami v. Am. Collections Enter., Inc.</u>, 377 F.3d 488, 495 (5th Cir. 2004); <u>Taylor v. Perrin, Landry, deLaunay & Durand</u>, 103 F.3d 1232, 1236 (5th Cir.1997) (When deciding whether a debt collection letter violates the FDCPA, this court "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard.) See Also, <u>Goswami</u>, 377 F.3d at 495. (We must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors.")

174.    RMS, MDS, and ICS violated the Plaintiff's right not to be the target of misleading debt collection communications.

175.    RMS, MDS, and ICS violated the Plaintiff's right to a truthful and fair debt collection process.

176.    RMS, MDS, and ICS's communications with Plaintiff were deceptive and misleading.

177.    RMS, MDS, and ICS used unfair and unconscionable means to attempt to collect the alleged debt.

178.    RMS, MDS, and ICS's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to RMS, MDS, and ICS's collection efforts.

179.    RMS, MDS, and ICS's failure to mark debts as disputed they know or should know are disputed violates § 1692e, 1692e(8) of the FDCPA.

180.    RMS, MDS, and ICS's conduct has caused Plaintiff to suffer damages including but not limited to a damaged credit score, the loss of time incurred by Plaintiff, and attorneys' fees paid for advice regarding his situation.

181.    Congress has found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

182.    Here, Plaintiff has suffered an injury-in-fact in at least one of the manners contemplated by Congress when it passed the FDCPA because of RMS, MDS, and ICS's conduct.

183.    The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. RMS, MDS, and ICS's false representations misled the Plaintiff in a manner that deprived him of his right to enjoy these benefits; these materially misleading statements trigger liability under section 1692e of the Act.

184.    Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered actual damages including but not limited to, fear, stress, mental anguish, emotional stress, and acute embarrassment.

185.    Defendants RMS, MDS, and ICS's violation of § 1692e of the FDCPA renders them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Dewayne Gray, prays that this Court:

A.    Declare that RMS, MDS, and ICS's debt collection actions violate the FDCPA;

B.    Enter judgment in favor of Plaintiff Dewayne Gray, and against RMS, MDS, and ICS, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.    Grant other such further relief as deemed just and proper.

## Count II: Violations Of § 1692d Of The FDCPA – Harassment or Abuse

186.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

187.    Section 1692d prohibits any debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

188.    RMS, MDS, and ICS's communications with Plaintiff were meant to shame, embarrass, and harass Plaintiff by misrepresenting the alleged debts status.

189.    RMS, MDS, and ICS attempted to coerce Plaintiff into paying alleged debts his otherwise would not have paid by submitting false and inaccurate information to his credit report.

190.    RMS, MDS, and ICS could have no other purpose in doing this except to harm Plaintiff's reputation and deprive him of his ability to receive any type of credit line unless he paid the alleged debts.

191.    Defendants RMS, MDS, and ICS's violation of § 1692d of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Dewayne Gray, prays that this Court:

A.    Declare that RMS, MDS, and ICS's debt collection actions violate the FDCPA;

B.    Enter judgment in favor of Plaintiff Dewayne Gray, and against RMS, MDS, and ICS, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.    Grant other such further relief as deemed just and proper.

## COUNT III: Violations Of § 1692f Of The FDCPA – Misleading Representations & Unfair Practices

192.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

193.    Section 1692f prohibits the use of unfair and unconscionable means to collect a debt.

194.    RMS, MDS, and ICS attempted to collect debts by distributing false information that would negatively impact Plaintiff's rights as a consumer, as well as that would harm Plaintiff's financial health.

195.    RMS, MDS, and ICS used unfair and unconscionable means to attempt to collect the alleged debts.

196.    RMS, MDS, and ICS's violation of § 1692f of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Dewayne Gray, prays that this Court:

A.      Declare that RMS, MDS, and ICS's debt collection actions violate the FDCPA;

B.      Enter judgment in favor of Plaintiff Dewayne Gray, and against RMS, MDS, and ICS, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.      Grant other such further relief as deemed just and proper.

## Count IV: Violation Of 15 U.S.C. § 1681e(b) of the FCRA-Reinvestigations of Disputed Information

197.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

198.    EQ, EX, and TU violated 15 U.S.C. 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files they published and maintain concerning the Plaintiff.

199.    As a result of this conduct, action and inaction of EQ, EX, and TU, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

200.    EQ, EX, and TU's conduct, action, and inaction were willful, rendering them liable for punitive damages in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

201.    The Plaintiff is entitled to recovery costs and attorney's fees from EQ, EX, and TU in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Dewayne Gray, prays that this Court:

A.      Declare that EQ, EX, and TU's credit reporting actions violate the FCRA;

B.      Enter judgment in favor of Plaintiff Dewayne Gray, and against EQ, EX, and TU, for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.      Or, in the alternative, enter judgment in favor of Plaintiff Dewayne Gray, and against EQ, EX, and TU, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.      Grant other such further relief as deemed just and proper.

**Count V: Violation Of 15 U.S.C. § 1681i of the FCRA-Reinvestigations of Disputed Information**

202.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

203.    Defendants EQ, EX, and TU violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to RMS, MDS, and ICS; by failing to maintain reasonable procedures with which to filter and verify disputed information in the plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

204.    As a result of this conduct, action and inaction of EQ, EX, and TU, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

205.    EQ, EX, and TU's conduct, action and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent entitling the Plaintiff to recovery actual damages under 15 U.S.C. § 1681o.

206.    The Plaintiff is entitled to recovery costs and attorney's fees from EQ, EX, and TU in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Dewayne Gray prays that this Court:

A.      Declare that EQ, EX, and TU's credit reporting actions violate the FCRA;

B.      Enter judgment in favor of Plaintiff Dewayne Gray, and against EQ, EX, and TU, for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.      Or, in the alternative, enter judgment in favor of Plaintiff Dewayne Gray, and against EQ, EX, and TU, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.      Grant other such further relief as deemed just and proper.

### Count VI: Violation Of 15 U.S.C. § 1681s-2(B) of the FCRA- Duties of Furnishers of Information upon Notice of Dispute

207.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

208.    Defendants RMS, MDS, and ICS violated 15 U.S.C. § 1681s-2(b) by continuing to report the RMS, MDS, and ICS representations within Plaintiff's credit file with EQ, EX, and TU  without also including a notation that this debt was disputed; by failing to fully and properly investigate the Plaintiff's dispute of the RMS, MDS, and ICS representations; by failing to review all relevant information regarding same; by failing to accurately respond to RMS, MDS, and ICS; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the RMS, MDS, and ICS representations to the consumer reporting agencies.

209.    As a result of this conduct, action, and inaction of RMS, MDS, and ICS, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

210.    Defendants RMS, MDS, and ICS's conduct, action and inaction were willful, rendering them liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

211.    Plaintiff is entitled to recover costs and attorney's fees from RMS, MDS, and ICS in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Dewayne Gray, prays that this Court:

A.      Declare that RMS, MDS, and ICS's credit reporting actions violate the FCRA;

      B.      Enter judgment in favor of Plaintiff Dewayne Gray, and against RMS, MDS, and ICS, for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

      C.      Or, in the alternative, enter judgment in favor of Plaintiff Dewayne Gray, and against RMS, MDS, and ICS, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

      D.      Grant other such further relief as deemed just and proper.

**JURY DEMAND**

212.      Plaintiff demands a trial by jury on all Counts so triable.

Dated: September 20, 2023

Respectfully Submitted,

**HALVORSEN KLOTE**

By:    /s/ Joel S. Halvorsen

Joel S. Halvorsen, #67032
680 Craig Road, Suite 104
St. Louis, MO  63141
P: (314) 451-1314
F: (314) 787-4323
joel@hklawstl.com